STATE OF LOUISIANA

LAFOURCHE PARISH

17th JUDICIAL DISTRICT COURT

NO.: 139904

DIVISION: DIVISION B

BOLLINGER MARINE FABRICATORS, L.L.C.

VERSUS

BOUCHARD TRANSPORTATION CO., INC.

DATE FILED: _____

_____
DEPUTY CLERK

PETITION FOR DAMAGES

The petition of Bollinger Marine Fabricators, L.L.C. ("Bollinger"), a Louisiana limited liability company with its registered agents in Lockport, Louisiana and its sole member domiciled in Lockport, Louisiana, respectfully represents as follows:

1.

Made Defendant is Bouchard Transportation Co., Inc. ("Bouchard"), a New York corporation, which is not registered with the Louisiana Secretary of State, has no agent for service appointed in Louisiana, and has a mailing address of 58 S. Service Rd. #150, Melville, New York 11747. Bouchard operates vessels which call on ports on the Gulf Coast and within the State of Louisiana. Bouchard also contracts for construction and repair of vessels in the State of Louisiana.

2.

Bouchard is liable to Bollinger for amounts it has failed to pay, together with interest at the rate of 12 percent per year from April 18, 2018 until paid, costs, expenses, and attorney's fees.

3.

This action arises from business transacted within this state and from breach of a vessel construction agreement ("Contract") and for collection under the Louisiana Open Account Statute.

4.

Venue is proper in Lafourche Parish, as the Contract was executed by Bollinger's President and CEO, Benjamin G. Bordelon, in Lockport, Louisiana, in Lafourche Parish.

EXHIBIT "A"

5.

On June 19, 2017, Bollinger and Bouchard entered into the Contract for the construction of the Barge B No. 252. A copy of the Contract is attached as Exhibit 1.

6.

The Contract contemplated change orders with price adjustments.

7.

Bouchard requested and approved a change order dated April 18, 2018 for a ballast water treatment system for the Barge B No. 252 in the amount of $595,750. A copy of the change order (Change Order 1) signed by Bouchard is attached as Exhibit 2.

8.

Bollinger performed the work requested and approved in the change order and issued invoice 501902002 in February 2019 to Bouchard; however, Bouchard has failed or refused to pay for the work performed by Bollinger. A copy of the invoice is attached as Exhibit 3. The invoice calls for interest at the rate of 12 percent per year.

9.

Bouchard previously agreed to pay for the amount reflected in the change order and invoice, as well as interest.

10.

Despite amicable demand, Bouchard has failed or refused to pay the amount owed to Bollinger, as well as interest owed.

11.

Bouchard has breached its contract with Bollinger and, as a result, is liable to Bollinger for the amount owed, interest at the rate of 12 percent per year from April 18, 2018, the date of the change order, until paid and for all costs and expenses of this proceeding.

12.

Bollinger also brings this action under the Louisiana Open Account Statute, under which Bouchard is liable to Bollinger for the amount owed of $595,750, interest at the rate of 12 percent per year from April 18, 2018 until paid, reasonable attorney's fees, and all costs and expenses of this proceeding.

EXHIBIT "A"

13.

Through its invoice issued to Bouchard, Bollinger made written demand upon Bouchard more than thirty days ago; however, Bouchard has failed or refused to pay the outstanding sums due and owing.

14.

Citation and service of this Petition also shall be deemed written demand under the Louisiana Open Account Statute.

15.

Accordingly, Bouchard is liable to Bollinger for the outstanding balance, interest, expenses, and attorney's fees incurred in connection with the prosecution of this action.

WHEREFORE, Bollinger Marine Fabricators, L.L.C. prays that Bouchard Transportation Co., Inc. be cited and served with a copy of this Petition for Damages and ordered to answer same within the delays allowed by law, and after due proceedings had, there be judgment in favor of Bollinger Marine Fabricators, L.L.C. and against Bouchard Transportation Co., Inc. in the amount of $595,750, together with interest at the rate of 12 percent per year from April 18, 2018 until paid, expenses, costs, attorney's fees, and all such further general and equitable relief to which Bollinger Marine Fabricators, L.L.C. may be entitled by law.

Respectfully submitted,

ADAMS AND REESE LLP

JAMES T. ROGERS III (#21845)
CHARLES A. CERISE, JR. (#1755)
MATTHEW C. GUY (#31182)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Email: jim.rogers@arlaw.com
       charlie.cerise@arlaw.com
       matt.guy@arlaw.com

*Attorneys for Bollinger Marine Fabricators, L.L.C.*

PLEASE SERVE – VIA THE LOUISIANA LONG-ARM STATUTE

Bouchard Transportation Co., Inc.
58 South Service Road
Suite 150
Melville, NY 11747

FILED

DEC 18 2019

CLERK OF COURT

A TRUE COPY
Clerk of Court's Office
Thibodaux, La. Dec 18 2019

Clerk of Court

3

EXHIBIT "A"

STATE OF LOUISIANA

LAFOURCHE PARISH

17th JUDICIAL DISTRICT COURT    DIVISION B

NO.: 139904

DIVISION: _____

BOLLINGER MARINE FABRICATORS, L.L.C.

VERSUS

BOUCHARD TRANSPORTATION CO., INC.

DATE FILED: _____    _____

DEPUTY CLERK

## REQUEST FOR WRITTEN NOTICE

Pursuant to the Louisiana Code of Civil Procedure, we hereby request written notice of the dates set for trial of the above numbered and entitled cause, or the dates set for hearing of any pleadings or motions therein, at least ten (10) days before any hearing date.

We also request notice of signing of any final judgment or the rendition of any interlocutory order of judgment in said cause, as provided by the Louisiana Code of Civil Procedure.

Respectfully submitted,

ADAMS AND REESE LLP

JAMES T. ROGERS III (#21845)
CHARLES A. CERISE, JR. (#1755)
MATTHEW C. GUY (#31182)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile:   (504) 566-0210
Email: jim.rogers@arlaw.com
         charlie.cerise@arlaw.com
         matt.guy@arlaw.com

*Attorneys for Bollinger Marine Fabricators, L.L.C.*

FILED

DEC 18 2019

CLERK OF COURT

A TRUE COPY
Clerk of Court's Office
Thibodaux, La. Dec 18, 2019

Clerk of Court

EXHIBIT "A"

ORIGINAL

## VESSEL CONSTRUCTION AGREEMENT

THIS AGREEMENT entered into this 19 day of June, 2017, by and between Bollinger Marine Fabricators, L.L.C., a Louisiana limited liability company with the current mailing address of P.O. Box 1609, Amelia, LA 70340 (hereinafter referred to as "Bollinger"), and Bouchard Transportation Co. Inc., a New York corporation with the current mailing address of 58 South Service Road, Suite 150 Melville, NY 11747 (hereinafter referred to as "Buyer").

### W I T N E S S E T H

That Bollinger and Buyer, for the consideration hereinafter set out, agree as follows:

### ARTICLE 1.  SCOPE OF WORK

A.  For and in consideration of the amounts to be paid to Bollinger by Buyer as hereinafter set forth, and subject to the terms and conditions contained herein, Bollinger agrees to build, outfit, and install Buyer-furnished equipment and deliver to Buyer afloat in international waters off the coast of Louisiana or at any mutually agreeable location, one (1) 317'-6"x 70'x 28' 55,000 BBL ATB Tank Barge, being Bollinger Hull No. 691, to be named the "B. NO 252"  (hereinafter referred to as "Vessel"), in accordance with the following documents which have been concurrently identified by the parties and attached hereto as Exhibit 1 and made a part hereof as if fully set forth herein:

 1)  Bouchard 55K BBL Barge Contract Spec Rev (B), dated June 15, 2017, (hereinafter "Specifications");

 2)  55K BBL Barge General Arrangement, Drawing No. 17613532-601, Rev (A), (hereinafter "Drawings");

B.  Provided that Bollinger's total undertaking hereunder, being i) the design (or the provision) of the plans and specifications of the Vessel and (ii) construction of the Vessel according to the plans and specifications, including (iii) any changes in the design or construction of the Vessel shall be hereinafter referred to as the "Work".  All Work (equipment, structure, and/or piping) is to be fabricated/installed in accordance with above-referenced drawings.

C.  The Work shall be in conformity with applicable requirements of the regulatory bodies as listed in the Specifications.  If any enforced changes in the regulatory bodies' rules are made subsequent to the date of this Agreement, whereby the cost of outfitting the Vessel is increased and/or the time required for completion is extended, Buyer shall authorize and pay for, as a change under this Agreement, such alterations, additional work items, outfit and/or equipment or additional time as may be required to meet the enforced changes.

D.  All general language or requirements contained in the Specifications and all other requirements inconsistent or in conflict with the provisions of this Agreement are



EXHIBIT 1

Bollinger initials _____ 4/20/17

Buyer initials _____

6/19/17

EXHIBIT "A"

ORIGINAL

superseded by this Agreement, it being the intent of the parties that provisions of this Agreement shall prevail.  If there is a conflict or inconsistency between the Drawings and Specifications, the Specifications shall control.

## ARTICLE 2.  PRICE AND PAYMENT

A.   In consideration of Bollinger's obligations hereunder, Buyer agrees to pay to Bollinger the sum of Seventeen Million Two Hundred Fifty Thousand and no/100 ($17,250,000.00) U.S. Dollars at par without discount or exchange (hereinafter referred to as the "Agreement Price"), for full and complete performance of the work covered by this Agreement, subject to the provisions of this Agreement, as follows:

1)  Upon execution of this Agreement, Buyer shall pay Five Hundred Seventeen Thousand Five Hundred and no/100 ($517,500.00) U.S. Dollars in immediately available funds, as a down payment. In the event the down payment is not received by Bollinger upon execution of the Agreement by both parties, such amount due to Bollinger shall bear interest at the rate of 2.5% per annum from the date of Agreement execution until paid, and the effective date of the Agreement shall be postponed as stated in Paragraph D of this Article hereinbelow.

2)  Progress payments shall be paid by Buyer to Bollinger whose invoices will be based on the following payment schedule:

|     | Date/Milestone | Progress Payment Due |      |
| --- | --- | --- | --- |
| 1.  | 5-Jul-17 (Contract & Spec Signing) | $517,500.00 | 3% |
| 2.  | 1-Nov-17 | $517,500.00 | 3% |
| 3.  | 25-Jan-18 | $862,500.00 | 5% |
| 4.  | 30-Mar-18 | $862,500.00 | 5% |
| 5.  | 30-Aug-18 | $1,725,000.00 | 10% |
| 6.  | 15-Oct-18 | $1,725,000.00 | 10% |
| 7.  | 30-Nov-18 | $1,725,000.00 | 10% |
| 8.  | 31-Dec-18 | $1,725,000.00 | 10% |
| 9.  | 31-Jan-19 | $1,725,000.00 | 10% |
| 10. | 5-Feb-2019 (Delivery) | $3,450,000.00 | 20% |
| 11. | 16-Apr-2019 (70 Days Post Delivery) | $2,415,000.00 | 14% |
|     |  |  |  |
|     | **Contract Total** | **$17,250,000.00** | **100%** |

Bollinger shall deliver invoices to Buyer for all progress payments due Bollinger hereunder, which invoices will be due upon receipt. Any payments which are not paid

Bollinger initials ~~BB~~ 4/20/17

Buyer initials ~~MLB~~ G
6/19/17 ✓

EXHIBIT "A"

ORIGINAL

to Bollinger within thirty (30) days after Buyer's receipt of invoice shall bear interest at the rate of 2.5% per annum from date of invoice until paid.

    3) Any increase or decrease in the Agreement Price that may be due for changes and extras to the Work shall be paid in accordance with the terms of Article 4 hereinbelow.

    4) Upon Delivery and Acceptance of the Vessel, a sum equal to the balance of the construction price due after receipt of the payments described above, including payment for changes and extras in accordance with Article 4, shall be paid to Bollinger by Buyer, without which payment the Vessel shall not depart Bollinger's yard.

B. In the event that Buyer disputes the amount of an invoice or statement or any portion thereof, Buyer shall notify Bollinger in writing of the dispute within ten (10) calendar days following Buyer's receipt of the invoice or statement, such notice to set out the specific reasons why the invoice or any portion thereof is being disputed. Notwithstanding any such dispute, Buyer shall pay when due the undisputed portion of each and every invoice or statement.

C. If any payment shall not be made when due on any undisputed invoices only as herein provided, Bollinger may, in its sole discretion, suspend or reschedule progress of the work (such right being in addition to any other right granted hereunder by operation of law) and Buyer shall pay Bollinger in addition to any other amount becoming due hereunder, all direct costs resulting from such suspension or rescheduling. In the event of delay in payment, Bollinger shall not be obligated to reschedule progress of the work, but may pursue any and all other remedies granted hereunder or by operation of law, provided that Buyer be given thirty (30) days prior written notice before Buyer is considered to be in default. If Bollinger has issued two written notices of default in payment hereunder, then Bollinger shall not be thereafter required to send written notices of default in the event of subsequent failures to pay invoices within the ten (10) days provided for in Article 2 (A) hereinabove.

D. <u>Effective Date of This Contract</u>. This Agreement shall become effective when it, along with the Specifications and Drawings, have been signed by both parties hereto and the down payment due at signing provided hereinabove has been received by Bollinger. The Effective Date of this contract shall be the later of the signing of this contract by both parties hereto and the receipt of the down payment for the Vessel. In the event the down payment is not received by Bollinger within fifteen (15) days from the signing of the Agreement by both parties, Bollinger may, at its sole option, terminate the Agreement without giving prior notice to Buyer and without any penalty or obligation by Bollinger to Buyer by giving Buyer notice of termination under this article.

## ARTICLE 3. DELIVERY AND ACCEPTANCE

A. Upon completion, the Vessel shall be given dock and sea trials as per the specifications, the said trials to be of sufficient duration to assure Buyer of the satisfactory performance

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 3 of 19

Bollinger initials _BB_ 4/24/17

Buyer initials _MMB_ CE
6/19/17

ORIGINAL

of such Vessel and of all of the various systems and operations installed therein, including satisfactory workmanship, proper working order, alignment of moving parts, suitability for intended purpose and compliance with the specifications and other requirements of this Agreement.  Adequate crew, properly qualified and credentialed, and sufficient amounts of fuel, water, and lube oil will be supplied by Bollinger, at its expense, in order to properly complete the testing of the Vessel and all equipment on board during sea trials and in-the-yard testings.

B.   The Vessel, after required trials and contemporaneously with payment in full (as stated in Article 2 above), shall be delivered to Buyer afloat in international waters off the coast of Louisiana free and clear of all liens and encumbrances, except those created by Buyer, nineteen (19) months after the Effective Date (hereinafter "Contract Delivery Date') or on such later date as may be required by reason of agreed or enforced changes in the Vessel or by reason of specified delays resulting from force majeure, as that term is defined herein.

C.   Upon delivery and acceptance of the Vessel, the following criteria shall be met:

1)   Such Vessel shall be presented by Bollinger in a manner consistent with the reputation of Bollinger, with good housekeeping in evidence and ready for Buyer to provision, outfit, crew and depart.

2)   The following documents shall be furnished by Bollinger, if appropriate:

    a.   A.B.S. Class Certificate +A1 Oil Tank Barge;
    b.   A.B.S. Load Line Certificate -- Manned Ocean Service;
    c.   A.B.S. or U.S.C.G. Approved Loading Manual;
    d.   U.S.C.G. Builder's Certificate;
    e.   U.S.C.G. Certificate of Documentation;
    f.   U.S.C.G. Certificate of Inspection;
    g.   U.S.C.G. Stability Letter;
    h.   U.S. and International Tonnage Certificates;
    i.   U.S.C.G. IOPP Certificate;
    j.   U.S.C.G. Bill of Sale;
    k.   Two (2) copies of as-builts, to be provided within thirty (30) days following final delivery and acceptance of the Vessel;
    l.   Two (2) copies of manufacturer-supplied documentation for all Bollinger supplied systems, components, and appliances; and
    m.   Two (2) copies of vessel stress calibration tables.

Bollinger shall pay all costs relating to the completion and recordation of these documents.

Buyer's acceptance of the Vessel shall constitute Buyer's agreement that the Vessel has been constructed in accordance with the Specifications, provided that Buyer's acceptance shall not affect Bollinger's obligations under the warranty provisions of this Agreement as to workmanship as provided in Article 12 hereinbelow.

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 4 of 19

Bollinger initials _BB_ v/20/17
Buyer initials _JMMC_
6/19/17 ✓

ORIGINAL

## ARTICLE 4.  CHANGES AND EXTRAS

A.  Buyer shall have the privilege during construction of the Vessel to request, in writing, reasonable changes in or addition to the Work hereunder; provided that where such changes or additions involve increases or decreases in the cost to Bollinger or production schedule, Bollinger and Buyer shall make the necessary price adjustments and/or modifications of Delivery Date as provided below.

B.  Bollinger shall not depart from the requirements of the drawings and specifications, or make any other changes in the Work required by the Drawings and Specifications, without prior written authorization by Buyer, to be done at a price or credit mutually agreed upon between Buyer and Bollinger, which amount will be in addition to or credited against the Agreement Price, as the case may be. In the absence of (1) a mutual agreement as to the amount of the increase (or decrease) in the Agreement Price, (b) the effect of such change on the Delivery Date and (c) prompt payment of any increase, then Bollinger shall not obligated to make any changes hereunder.

Bollinger shall not be obligated to furnish any spare parts or supplies other than those specifically set forth in the Specifications, and any additional spare parts requested by Buyer shall be considered extra equipment for which Bollinger shall receive additional compensation as stated herein.

C.  If any change is mandated by a regulatory body or required due to a change in Law that is effective following the effective date of this Agreement, the cost of such change shall be for Buyer's account.

## ARTICLE 5.  RISK OF LOSS AND INSURANCE

A.  Bollinger shall have during construction and until delivery and acceptance, title to and risk of loss or damage to the Vessel and the Work hereunder, and all material, machinery and equipment, whether or not already attached to or installed in the Vessel, provided that title to the Vessel and the Work hereunder shall vest in Buyer in the proportions and to the extent of the timely payments made by Buyer under the provisions of this Agreement, and provided that with respect to items furnished by parties other than Bollinger, such risk of loss on the part of Bollinger shall not commence until such items have been received by Bollinger at the Shipyard. Buyer shall report or cause to be reported as promptly as possible, to Bollinger the dates of arrival at Bollinger's facility, of all materials and equipment being furnished by any party other than Bollinger. Delivery to and acceptance of the Vessel by Buyer shall transfer title and risk of loss or damage of the Vessel, and all work, material, machinery, and equipment to Buyer. Title to all Buyer-furnished materials and equipment is at all times recognized by Bollinger to be vested in Buyer free and clear of any interest or claim of Bollinger.

B.  In the event there is a total loss or constructive total loss of the Vessel prior to delivery and acceptance, regardless of force majeure (defined in Article 9), Buyer will have the option to (i) cancel this Agreement, in which event Bollinger shall immediately reimburse

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 5 of 19

Bollinger initials _____ 6/20/17

Buyer initials _____

6/19/17

ORIGINAL

Buyer (a) amount, if any, paid to Bollinger toward the Agreement price of the Vessel, and (b) an amount equivalent to the agreed insured value for items of materials and equipment furnished by Buyer which are damaged or are a total loss or a constructive total loss, or (ii) request Bollinger to advise a new Delivery Date and Agreement Price for the replacement Vessel and if such date and price are acceptable to Buyer, maintain this Agreement and Bollinger shall thereafter deliver to Buyer a Vessel in accordance with the terms of this Agreement with the Delivery Date and Agreement Price adjusted as advised by Bollinger and agreed by Buyer. In adjusting the Agreement Price for the replacement Vessel, adjustments either upward or downward will be based only on increases or decreases in the cost of materials and labor and on changes mandated by regulatory agencies of the U.S. Government.

C.   Bollinger agrees, during the entire time of its performance of work hereunder, to carry at its sole cost and expense, with an insurance company reasonably satisfactory to Buyer, the following insurance with terms and conditions acceptable to Buyer:

1)   Statutory Worker's Compensation insurance covering all of Bollinger's employees engaged in the work to be performed hereunder, in accordance with the laws of the State of Louisiana, the United States Longshoremen's and Harbor Worker's Compensation Act, and any other applicable workers' compensation law. The policy will also include Employer's Liability (other than Maritime) for a limit not less than $1,000,000 each accident, and shall contain the "Alternate Employer Endorsement" stipulating that any claim made against Buyer by any employee of Bollinger or its subcontractors shall be covered under this policy and that Buyer shall have the benefit of this insurance with respect to any such claim.

2)   Maritime Employer's Liability insurance (including transportation, wages, maintenance and cure) for limits not less than $1,000,000 each person and $1,000,000 each occurrence.

3)   Commercial General Liability (CGL) insurance with a combined bodily injury and property damage limit of not less than $1,000,000 each occurrence, including products and completed operations coverage, non-owned watercraft coverage, and contractual coverage for all liability assumed by Bollinger under the terms of this Agreement with limits of liability not less than those set out herein.

4)   Business Auto Liability insurance with a combined bodily injury and property damage limit of not less than $1,000,000 each occurrence.

5)   Excess Liability insurance with a combined bodily injury and property damage limit of not less than $5,000,000 each occurrence.

6)   Builder's Risk insurance (including protection and indemnity clauses and covering all periods up to delivery and acceptance of the Vessel after tests and trials) for loss of or damage to the Vessel and work hereunder, including materials and equipment to be furnished by parties other than Bollinger, agreed by Bollinger and Buyer to be an aggregate total value of $17,250,000.

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 6 of 19

Bollinger initials _PB_ 6/20/17

Buyer initials _MDB_
6/19/17

EXHIBIT "A"

ORIGINAL

D.  With respect to Workers' Compensation, Employer's Liability, and Maritime Employer's Liability insurance, Bollinger agrees that all of the policies shall contain waivers of underwriters' rights of subrogation against Buyer. With respect to CGL, Business Auto Liability, and Excess Liability insurance, Bollinger agrees that all of the policies shall contain waivers of underwriters' rights of subrogation against Buyer, and that Buyer shall be named an additional assured on such policies. It is agreed that such naming and waiving shall apply to the extent and only to the extent of the valid and legally enforceable indemnity obligations and risks assumed by Bollinger in this Agreement. It is further understood and agreed that that the indemnity obligations of Buyer to Bollinger shall be considered primary to any obligation of Bollinger's CGL insurer, Business Auto Liability insurer, and Excess Liability insurer, to afford coverage to Buyer. With respect to Builder's Risk insurance, Bollinger agrees that such policy shall contain waivers of underwriters' rights of subrogation against Buyer, that Buyer shall be named an additional assured, and that Buyer shall be named as a loss payee as its interests may appear.

E.  Bollinger agrees to furnish Buyer with certificates of insurance evidencing the above coverage within thirty (30) days of the effective date of this Agreement.  Such certificates shall stipulate that thirty (30) days advance written notice of cancellation or material changes shall be given to Buyer.  It is understood that should at any time the Buyer require insurance coverage in addition to that mentioned in this Article, such insurance shall be procured by Buyer and be at Buyer's expense.

F.  The full premium cost of each policy of insurance hereinabove referred to shall be borne by Bollinger. Bollinger agrees to allow Buyer to inspect all such policies or copies thereof at all reasonable times, and Bollinger shall notify Buyer as soon as practicable in the event of any policy cancellation, material alteration, or notice of either which may be received by Bollinger relative to the Vessel.

G.  Bollinger's compliance, or its failure to comply, with the insurance provisions of this Agreement shall not relieve or limit its obligation to indemnify or hold Buyer harmless where and to the extent so required by the provisions of this Agreement.

H.  Buyer agrees during the entire time of its performance or work hereunder to carry at its sole cost and expense with an insurance company reasonably satisfactory to Bollinger, the following insurance with terms and conditions acceptable to Bollinger:

1)  Statutory Worker's Compensation insurance covering all of Buyer's employees engaged in the work to be performed hereunder, in accordance with the laws of the State of Louisiana, the United States Longshoremen's and Harbor Worker's Compensation Act, and any other applicable workers' compensation law. The policy will also include Employer's Liability (other than Maritime) for a limit not less than $1,000,000 each accident, and shall contain the "Alternate Employer Endorsement" stipulating that any claim made against Bollinger by any employee of Buyer or its subcontractors shall be covered under this policy and that Bollinger shall have the benefit of this insurance with respect to any such claim.

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 7 of 19

Bollinger initials _ZB_ 6/20/17

Buyer initials _MdB_ ⑪
6/19/17 ✓

ORIGINAL

2) Maritime Employer's Liability insurance (including transportation, wages, maintenance and cure) for limits not less than $1,000,000 each person and $1,000,000 each occurrence.

3) Commercial General Liability (CGL) insurance with a combined bodily injury and property damage limit of not less than $1,000,000 each occurrence, including products and completed operations coverage, watercraft exclusion deleted, and contractual coverage for all liability assumed by Buyer under the terms of this Agreement with limits of liability not less than those set out herein.

4) Business Auto Liability insurance with a combined bodily injury and property damage limit of not less than $1,000,000 each occurrence.

5) Excess Liability insurance with a combined bodily injury and property damage limit of not less than $5,000,000 each occurrence.

I.   With respect to Workers' Compensation, Employer's Liability, and Maritime Employer's Liability insurance, Buyer agrees that all of the policies shall contain waivers of underwriters' rights of subrogation against Bollinger. With respect to CGL, Business Auto Liability, and Excess Liability insurance, Buyer agrees that all of the policies shall contain waivers of underwriters' rights of subrogation against Bollinger, and that Bollinger shall be named an additional assured on such policies It is understood and agreed that such naming and waiving shall apply to the extent and only to the extent of the valid and legally enforceable indemnity obligations and risks assumed by Buyer in this Agreement. It is further understood and agreed that the indemnity obligations of Bollinger to Buyer shall be considered primary to any obligation of Buyer's CGL insurer, Business Auto Liability insurer, and Excess Liability insurer, to afford coverage to Bollinger.

J.   Buyer agrees to furnish Bollinger with certificates of insurance evidencing the above coverage within thirty (30) days of the effective date of this Agreement.  Such certificates shall stipulate that thirty (30) days advance written notice of cancellation or material change shall be given to Bollinger.  It is understood that should at any time Bollinger require insurance coverage in addition to that mentioned in this Article, such insurance will be procured by Bollinger and be at Bollinger's expense.

K.   The full premium cost of each policy of insurance hereinabove referred to shall be borne by Buyer.  Buyer agrees to allow Bollinger to inspect all such policies or copies thereof at all reasonable times, and Buyer shall notify Bollinger immediately in the event of any policy cancellation, material alteration, or notice of either which may be received by Buyer relative to the Vessel.

L.   Buyer's compliance, or its failure to comply, with the insurance provisions of this Agreement shall not relieve or limit its obligation to indemnify or hold Bollinger harmless where and to the extent so required by the provisions of this Agreement.

Bollinger initials _BB_ 4/24/17

Buyer initials _OMDB_ 1k
6/19/17 ✓

EXHIBIT "A"

ORIGINAL

## ARTICLE 6.  INDEMNIFICATION

A.  Bollinger shall unconditionally release, indemnify, defend and hold harmless Buyer, its officers, directors, agents, employees, parent companies, subsidiaries, affiliates, successors, assigns, contractors, subcontractors and the Vessel itself (hereinafter collectively referred to as "Buyer Group") against any and all liability, claims, demands, losses, suits, and causes of action of every kind and character and the costs thereof (including, without limitation, court costs, any other litigation expenses, and attorneys fees including any such costs, expenses and fees incurred in suing to enforce this Agreement), arising out of or related to injury, death or property damage occurring in connection with the performance or non–performance of this Agreement to the extent alleged or asserted by Bollinger, or by any of Bollinger's subcontractors, or by any employee, agent or invitee of Bollinger or of any of Bollinger's subcontractors, in each case, whether or not said liability, claim, demand, loss, suit or cause of action is alleged to be caused in whole or in part by the sole or concurrent negligence, act, omission, fault or strict liability of Buyer Group or as a result of claims of unseaworthiness of any vessel, defect in premises, or any other act or omission by Buyer Group, and regardless of whether such negligence, act, or omission is active or passive, primary or secondary. The provisions of this Article shall survive any termination or expiration of this Agreement and delivery and acceptance of the Vessel.

B.  Buyer shall unconditionally release, indemnify, defend and hold harmless Bollinger, its officers, directors, agents, employees, parent companies, subsidiaries, affiliates, successors, assigns, contractors, subcontractors (hereinafter collectively referred to as "Bollinger Group") against any and all liability, claims, demands, losses, suits, and causes of action of every kind and character and the costs thereof (including, without limitation, court costs, any other litigation expenses, and attorneys fees including any such costs, expenses and fees incurred in suing to enforce this Agreement), arising out of or related to injury, death or property damage  occurring in connection with the performance or non–performance of this Agreement, **excepting, however, from this indemnification only the Vessel itself, and any Components, equipment, machinery, Work and Buyer Furnished Equipment associated with or incorporated into the Vessel**, to the extent alleged or asserted by Buyer, or by any of Buyer's subcontractors, or by any employee, agent or invitee of Buyer or of any of Buyer's subcontractors, in each case, whether or not said liability, claim, demand, loss, suit or cause of action is alleged to be caused in whole or in part by the sole or concurrent negligence, act, omission, fault or strict liability of Bollinger Group or as a result of claims of unseaworthiness of any vessel, defect in premises, or any other act or omission by Bollinger Group, and regardless of whether such negligence, act, or omission is active or passive, primary or secondary. The provisions of this Article shall survive any termination or expiration of this Agreement and delivery and acceptance of the Vessel.

## ARTICLE 7.  PATENT, COPYRIGHT AND TRADE SECRET INDEMNITY

A.   Bollinger agrees to protect and hold harmless Buyer against claims of third persons for damage sustained by reason of infringement of patent rights, plans, proprietary information, copyrights, and trade secrets with respect to designs, materials, processes,

Bollinger initials _____
Buyer initials _____

ORIGINAL

plans, proprietary information, machinery, and equipment selected and furnished by Bollinger in such works.

B.   Buyer agrees to protect and hold harmless Bollinger against claims of third persons for damages sustained by reason of infringement of patent rights, plans, proprietary information, copyrights, and trade secrets with respect to designs, materials, processes, plans, proprietary information, machinery and equipment supplied or specifically acquired by Buyer or by any other party on behalf of Buyer, or required by any plans and specifications furnished by Buyer.

C.   The indemnitee shall notify the indemnitor of the filing of any suit so as to permit the timely filing of an answer thereto, and upon such notice the indemnitor shall have the obligation to assume full defense of such suit and the right to control the defense of such suit with attorneys of indemnitor's selection and shall have the right to settle such suit in indemnitee's name, and further provided that the indemnitee shall fully cooperate with the indemnitor in the defense of such suit. The indemnitee may, at indemnitee's election, participate in the defense of a claim at indemnitee's expense, provided that the indemnitor's decisions as to settlement and defense shall be final.

## ARTICLE 8.  INSPECTION, ACCESS AND TEST

During construction, outfitting tests and trials, Buyer or its accredited representatives shall have access to inspect the Vessel and the work at all reasonable times.  Buyer shall bear the cost for Buyer's representative in such access and inspection but shall not be required to compensate Bollinger for the reasonable use of Bollinger's facilities in connection therewith.  Bollinger will perform dock tests and trials and sea tests and trials of the Vessel and its component systems of sufficient nature and duration so as to assure that the Vessel is delivered to Buyer in an operating, fit and seaworthy condition. Bollinger will give Buyer at least forty-eight (48) hours written or telephoned notice of the date of said tests and trials.  All the workmanship and material required under this Agreement, while the same is in fabrication, erection, construction, installation and performance, shall be inspected promptly by the representative and agents of Buyer and shall be accepted promptly in accordance with this Agreement and rejected promptly if not in accordance therewith.

## ARTICLE 9. FORCE MAJEURE

A.  All work performed by Bollinger under this Agreement, with respect to any stipulated completion date of such Work or the stipulated Delivery Date of the Vessel, shall be subject to extension by reason of force majeure. The parties agree that such causes shall include, but not be limited to, the following: all strikes, lockouts, or any other industrial disturbance, shortages, act of God, war, preparation for war, the intervention of the Military or other agencies of government, blockade, riots, insurrection, rain, landslides, floods, named tropical storms, tornadoes, earthquakes, collisions, fire, epidemics, any delay or non-delivery of Buyer-furnished material and/or equipment, delays caused by changes authorized by Buyer.  Force Majeure shall also include delays caused by Bollinger's cessation of work to prepare and secure the Shipyard from the

Bollinger initials _BB_ 4/29/17

Buyer initials _DMHB WP_
6/19/17

ORIGINAL

anticipated effects of a named tropical storm or hurricane projected by the National Hurricane Center to make landfall in three (3) calendar days or less within two hundred miles of the Shipyard and the time reasonably required to restore shipyard infrastructure, equipment, machinery and facilities following the passage of such named tropical storm or hurricane.

No extension of the completion date due to force majeure, however, shall suspend, alter or affect Bollinger's right to receive or Customer's duty, if any, to compensate for all Work completed through the date of suspension.

B.  Within fifteen (15) days of knowledge that the stipulated date of delivery will be affected by any force majeure event, Bollinger shall notify Buyer in writing, and shall furnish an estimate, if possible, of the extent of the delay.  Upon receipt of any such notice, Buyer shall, within seven (7) days, acknowledge the same in writing and indicate agreement if such development is to be treated as a force majeure event or state any objections, and the reasons therefore, to acceptance of this development as a force majeure event.  If Buyer shall fail to respond within seven (7) days, the extension of time shall be considered approved.  If and when the completion of the Vessel is delayed by force majeure, the stipulated delivery date shall be extended by a period equal to the period of the delay.

## ARTICLE 10.  LIQUIDATED DAMAGES

Bollinger and Buyer agree and fully understand that time is of the essence in this Agreement and stipulate that after required trials and completion in accordance with this Agreement and specifications relating thereto, the Vessel shall be delivered to Buyer in accordance with the date and terms set forth in Article 3 of this Agreement.  In the event that Bollinger fails to deliver the Vessel on or before the Contractual Delivery Date, as adjusted for changes made hereunder and delays resulting from force majeure as defined herein, Buyer will suffer damages which are difficult to ascertain and therefore Buyer accepts, in lieu of actual damages, liquidated damages in the amount of $8,000.00 per day of delay with a maximum aggregate sum of $750,000.00 due by Bollinger in the event of delayed delivery of the Vessel.

## ARTICLE 11. CONSEQUENTIAL DAMAGES

**Except as provided for in Article 5 (insurance), Article 6 (hold harmless) and Article 10 (liquidated damages) of this Agreement, this Article applies to and takes precedence over any other Articles, Sections, or provisions of this Agreement, including but not limited to Articles applicable to warranty and time of delivery. Under no circumstances and under no theory of law, whether contract, quasi-contract, strict liability, warranty, tort, (including the sole or concurrent negligence) fault, or any other theory of law or cause of action, shall Bollinger have any liability to Buyer for (i) loss of revenue, loss of profit, loss of use of capital or production delays, loss of any portion of or all of a Vessel or any aspect of the Work, delays in delivery of the Vessel, losses resulting from failure to meet other contractual commitments or deadlines, downtime of facilities or vessels, in**

Bollinger initials _RB_ 6/20/17

Buyer initials _MLB_ KP

6/19/17 ✓

EXHIBIT "A"

ORIGINAL

each case, regardless of whether such claim, or the basis thereof, is considered as a consequential damage or not, or (ii) indirect or consequential loss or damage, however and whenever arising under this Agreement or as a result of or in connection with the Vessel, and whether based on negligence, whether sole or concurrent or active or passive, or unseaworthiness, breach of warranty, breach of contract, or otherwise; i) and ii) above are defined as Consequential Damages.

## ARTICLE 12.  WARRANTY

A.  <u>Workmanship.</u> Bollinger warrants that all Work will be done in a good and workmanlike manner and that all labor and installations made shall meet the requirements and standards described in the specifications, and all materials and equipment used by Bollinger and incorporated into the Vessel, except those specified or furnished by Buyer, shall be as provided for in the specifications.

B.  <u>Materials and Equipment.</u> Bollinger warrants that any material or equipment purchased by it for use or installation in the Vessel is free from manufacturer's defects. Bollinger further warrants that the installation of all systems, equipment and engines, and all Buyer-furnished equipment, shall be installed in accordance with manufacturer's recommendations and requirements, provided that in the absence of manufacturer's recommendations and requirements, that the installation will be in accordance with good shipyard practice.

C.  <u>Paint.</u> Bollinger warrants only that it will i) purchase paint of good marine quality as designated in the specifications, ii) apply the paint in accordance with the Manufacturer's specifications and recommendations, and iii) transfer to Buyer a manufacturer's warranty which provides for repair and replacement due to defective material for a period of time which is at least as long as Bollinger's warranty provided for herein.

D.  <u>Term.</u> Bollinger's warranty shall extend only to the original Buyer and only to such claims related to undertakings, representations, warranties, design, defects, workmanlike performance, installation of material or equipment or unseaworthiness ("Claims") reported in writing to Bollinger within one (1) year of the delivery and acceptance of the Vessel. Upon receipt of due notice of any defect covered under this warranty, Bollinger will make repairs or replacements, at its option, at its Shipyard without expense to it for transporting the Vessel or any component thereof to or from its Shipyard.  In the event repairs must be made other than at the Shipyard because it is impractical to transport the Vessel to a Bollinger facility, and if Buyer has such repairs made under the terms of this warranty, it is expressly understood by Buyer that Bollinger will be responsible only for a maximum of one hundred ten (110%) per cent of the retail costs (without overtime) which Bollinger would have charged, had Bollinger done the work. In the event of any Claim the nature or extent of which does not require placement of the Vessel in a shipyard, Bollinger shall, at its sole cost and expense, make repairs or replacements at a mutually agreed upon location which is practical and reasonable under the circumstances.

Bollinger initials _BB_ 6/20/17

Buyer initials _OM/DFP_

6/19/17

EXHIBIT "A"

ORIGINAL

E.   Sole Remedy. The sole and exclusive remedy of Buyer for Claims shall be limited to the obligation of Bollinger to repair and/or replace, or cause to be repaired or replaced, at its option, any such defective workmanship or installation of materials or equipment, provided such defects or breakdowns have not been caused by the negligent operations of the Vessel or its equipment, after delivery and acceptance, by those in charge of the Vessel's operation, or other persons not in the employ of Bollinger, or the manufactured supplied items.

F.   Reporting of Claims. Bollinger shall have no responsibility whatsoever with respect to any Claims not reported in writing within said one (1) year, regardless of any negligence on the part of Bollinger or its employees or subcontractors or their employees or of any furnisher of materials in connection therewith, and Buyer waives and releases Bollinger, its employees, subcontractors and their employees and all furnishers of materials and supplies from all such liability and all damages resulting therefrom, whether same be based on contract or tort, for any damages or loss to the Vessel resulting from Claims.

## ARTICLE 13.  LIENS AND ENCUMBRANCES

A.   Following payment of the sums due to Bollinger by Buyer hereunder, Bollinger agrees to deliver the Vessel to Buyer free and clear of any and all liens, claims, encumbrances and rights in rem in favor of Bollinger or any workmen, materialmen, subcontractors, or others to whom Bollinger is responsible, excluding liens, mortgages or encumbrances created by Buyer to facilitate interim construction financing.

B.   In the event of the filing or attaching of any lien or encumbrances created or suffered by or through Bollinger against the Vessel before final payment, Buyer may, but shall not be required to, satisfy the same out of any amount remaining to be paid to Bollinger hereunder, or Buyer may, at its option, withhold the amount thereof from any payment to become due hereunder.  When final payment is to be made under this Agreement, as condition precedent thereto, Buyer may, in its discretion, require that Bollinger provide to Buyer a statement certifying that there exist no liens or rights in rem of any kind against the Vessel or its respective machinery, fittings, or equipment which relate to actions of Bollinger and excluding any liens or encumbrances created by Buyer.

C.   In addition to and notwithstanding the foregoing, Bollinger agrees to indemnify Buyer and hold it harmless from and against all liens and claims for labor, material, taxes, privileges and licenses arising out of, in connection with, or resulting from the operations or activities of Bollinger, its employees or agents or subcontractors and the employees or agents of their subcontractors, and agrees to defend any such claim asserted or suit brought against Buyer and to pay any judgment rendered in any such action, provided, however, that Buyer shall have the right, if it so elects, to participate at its own expense in the defense of any such claims or suits, but such participation shall not operate to affect Bollinger's liability and obligation hereunder.

D.   Buyer agrees to indemnify Bollinger and hold it harmless from and against all liens and claims for labor, materials, taxes, privileges and licenses arising out of, in connection with, or resulting from the operations or activities of Buyer, its employees or agents or

Bollinger initials _____ 6/20/17

Buyer initials _____
6/19/17

EXHIBIT "A"

ORIGINAL 

subcontractors and the employees or agents of their subcontractors, and agrees to defend any such claim asserted or suit brought against Bollinger and to pay any judgment rendered in any such action, provided, however, that Bollinger shall have the rights, if it so elects, to participate at its own expense in the defense of any such claims or suits, but such participation shall not operate to affect Buyer's liability and obligation hereunder.

## ARTICLE 14.  BUYER-FURNISHED EQUIPMENT AND INFORMATION

A.  Bollinger shall, at its own expense and risk, receive, inspect, check as to agreement with Bills of Lading, store, protect, insure and install aboard the Vessel all of the items required by the specifications to be furnished by Buyer.  Bollinger shall not be deemed to have extended any warranty as to materials or equipment furnished by Buyer. Bollinger shall be liable to Buyer for any damage to or loss of the items furnished by Buyer occurring during Bollinger's custody thereof which may arise from any event.  The cost of technical support required to commission buyer-furnished equipment after installation by Bollinger shall be the responsibility of Buyer.

B.  No later than thirty (30) days after the Effective Date of this Contract, Buyer shall provide a schedule of buyer-furnished equipment and buyer-furnished information detailing the value of each specific unit, if any.  Bollinger shall, within thirty (30) days from receipt of this schedule, notify Buyer of Bollinger's need date of each unit, accessories and information. Bollinger's liability to Buyer for any damage to or loss of any or all of the items furnished by Buyer occurring during Bollinger's custody thereof shall not exceed Buyer's full replacement cost.

C.  Buyer acknowledges that the components and information being supplied have critical importance to the maintenance and achievement of the construction schedule. Buyer also acknowledges that the failure to deliver said components and/or information in accordance with the required dates established in the construction schedule as the need dates, may cause a delay in the completion of the Vessel, and may cause Bollinger to incur additional costs over and above those projected for this Agreement, and may cause disruption to Bollinger's production schedule for other work and/or projects. In the event that completion of the Vessel is delayed as a result of Buyer's failure to timely provide buyer-furnished equipment and/or buyer-furnished information under this Agreement, the stipulated Delivery Date shall be extended by a period equal to the period of the delay. In the event Bollinger incurs additional costs or experiences a disruption in its production schedule as a result of Buyer's failure to timely provide buyer-furnished equipment and/or buyer-furnished information under this Agreement, Buyer shall compensate Bollinger for all costs (direct and indirect) that Bollinger may demonstrate as resulting from the delay.

D.  In order to facilitate installation by Bollinger of buyer-furnished equipment in or on the Vessel, Buyer shall furnish Bollinger with necessary specifications, plans, drawings, instruction books, manuals, test reports and certificates required for their installation. Buyer, if so requested by Bollinger, shall, without any charge to Bollinger, cause the representatives of the manufacturers of buyer-furnished equipment to assist Bollinger in the installation thereof in or on the Vessel and/or to carry out installation thereof by themselves or to make necessary adjustments thereof at the Shipyard.

Bollinger initials _____ 6/20/17

Buyer initials _____

6/19/17

EXHIBIT "A"



E. Any and all of buyer-furnished equipment shall be subject to Bollinger's reasonable right of rejection, as and if they are found to be unsuitable or in improper condition for installation.  However, if so requested by Buyer, Bollinger may repair or adjust buyer-furnished equipment without prejudice to Bollinger's other rights hereunder and without being responsible for any consequences therefrom.  In such case, Buyer shall reimburse Bollinger for all costs and expenses incurred by Bollinger in such repair or adjustment and the Delivery Date shall be automatically postponed for a period of time necessary for such repair or replacement.

F. Any buyer-furnished equipment remaining in or on Bollinger's facilities 90 days following delivery and acceptance of the Vessel shall become the property of Bollinger without further compensation due by Bollinger to Buyer, or Bollinger may, at Bollinger's sole discretion, dispose of such buyer-furnished equipment at Buyer's sole cost and expense.

## ARTICLE 15.  TAXES AND UNEMPLOYMENT CONTRIBUTIONS

A.  Bollinger does hereby acknowledge and accept full liability for the payment of all payroll taxes and unemployment contributions or other taxes or contributions now or hereafter imposed by any government or taxing authority having jurisdiction in the premises, and which are measured or computed in accordance with salaries or other compensation, and which have become due or payable by virtue of the performance of Bollinger's obligations hereunder, and Bollinger hereby agrees to indemnify Buyer in the premises.

B.  Notwithstanding the foregoing, Buyer does hereby acknowledge and accept exclusive liability for the payment of all sales or use taxes or other taxes (other than franchise taxes or income taxes or payroll taxes), which may become due by virtue of the work performed hereunder, including without limitation, sales taxes arising from the sale of the Vessel or the components of said Vessel to Buyer, and Buyer does hereby agree to indemnify Bollinger in the premises.  Sales taxes for material, equipment, and services to be provided by Bollinger, as provided in this Agreement and accompanying Contract documents, are included in the price of the Vessel provided in Article 2 hereof.

C. If sales and use taxes are assessed and found to be due on the transfer of any and all of Buyer's rights under this Agreement or on any transfer of the Vessel that may occur, then those sales or use taxes will be for the account of Buyer.

## ARTICLE 16.  USE OF PLANS AND SPECIFICATIONS

The Specifications, Contract Plans, Bollinger's numeric control tapes, design, engineering calculations, modeling studies (if any), and Bollinger's working and as built drawings of the Vessel (hereinafter "Plans and Specifications") are and shall remain the property of Buyer and/or Buyer's affiliate companies.  Bollinger shall not use the Plans and Specifications for new construction or repair on behalf of any of Buyer's competitors, and Buyer shall have no right to use any of the Plans and Specifications to construct any additional Vessel(s) by Bollinger competitors.

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 15 of 19

Bollinger initials
Buyer initials

EXHIBIT "A"



## ARTICLE 17.  DEFAULT

A.   If either party hereto shall become adjudicated bankrupt or an order appointing receiver of it or the major part of its property shall be made, an order shall be made approving a petition or answer seeking its reorganization under the Federal Bankruptcy Act, as amended, or either party shall institute proceedings for voluntary bankruptcy or apply for or consent to the appointment of a receiver of itself or of its property, shall make an assignment for the benefit of creditors or shall admit in writing, its inability to pay its debts generally as they become due, for the purpose of seeking a reorganization under the Federal Bankruptcy laws, or otherwise commits a substantial violation of any provision of this Agreement resulting in a default hereunder and such default not be cured within thirty (30) days notice thereof, except as provided in Article 2 in the event of default of Buyer in payment, then in any one or more of such events the other party shall have the option forthwith to terminate this Agreement to all intents and for all purposes by giving written notice of its intention to do so.  Any termination of this Agreement made pursuant to the provisions of this article shall not relieve either party from any accrued obligations hereunder due and owing at the date of such termination.

B.   In the event of default by Bollinger, Buyer may, without prejudice to any right or remedy that may exist under this Agreement, terminate the employment of Bollinger and take possession of all materials, equipment, tools, and machinery thereon owned or furnished by Buyer and stored by Bollinger, and may enter the premises of Bollinger and remove the Vessel and all components thereof and may finish the work by whatever method Buyer may deem appropriate at another location or facility. If the unpaid balance of the Agreement Price exceeds the costs of finishing the work, including compensation for additional services made necessary thereby, and damages sustained by Buyer, such excess shall be paid to Bollinger. If such costs exceed the unpaid balance, Bollinger shall pay the difference to Buyer.

C.   In the event of default by Buyer, Bollinger may, without prejudice to any right or remedy that may exist under this Agreement, and at its sole option and discretion, suspend all work upon the Vessel until the default has been cured, reserving the right to thereafter terminate this Agreement by giving written notice to do so, or may sell the Vessel in its then present condition and location, or may complete the Vessel for sale to a third party and apply the proceeds of sale, net of all expenses, to any unpaid balance due and owing to Bollinger.

## ARTICLE 18.  ASSIGNMENT

A.   This Agreement, and the benefit and the payment of any benefits made hereunder, may be assigned by Buyer to any individual, firm or corporation which it may designate, provided that:

1)   No such assignment may violate any law of the United States or rule or regulation issued or promulgated by any department or agency of instrumentality of the United States government;

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 16 of 19

Bollinger initials _PB_ 6/29/17
Buyer initials _RMB_ EW
6/19/18

EXHIBIT "A"



2)  Regardless of such assignment, Buyer shall remain fully liable and responsible to Bollinger for the performance of all obligations of Buyer hereunder, as if said assignment had not been executed; and

3)  Regardless of any such assignment, Bollinger shall not be required to perform any of its obligations hereunder if at the time such performance is demanded, Buyer is in default with respect to any of its obligations to Bollinger hereunder, and without limiting the generality of the foregoing, Bollinger shall not be required to deliver the Vessel hereunder until and unless full payment and conditions for same have been made to Bollinger as provided herein.

Bollinger agrees to consent to any such assignment by Buyer, but subject to the limitations set forth above.

B.  Buyer agrees that Bollinger may assign Bollinger's rights to receive payment hereunder to any firm, individual, or corporation which it may designate.

## ARTICLE 19. SUBCONTRACTORS

Bollinger reserves the right to subcontract any part or all the work under this Agreement, and in such event, Bollinger shall remain primarily responsible to Buyer for the performance of any and all work sublet by Bollinger, and agrees that it is completely responsible to Buyer to assure that the subcontracted work meets the requirements of this Agreement.

## ARTICLE 20.  NOTICES

All notices or communications hereunder shall be in writing and shall be either delivered in person or mailed by certified mail, return receipt requested, or can be emailed with confirmation to follow by letter, as follows:

A.  If to Bollinger:

| Bollinger Marine Fabricators, L.L.C. Benjamin G. Bordelon, President & CEO P.O. Box 250 Lockport, LA 70374 benb@bollingershipyards.com | With a copy to: Rachael Battaglia, Sr. Corporate Counsel P.O. Box 250 Lockport, LA 70374 rachaelb@bollingershipyards.com |

B.  If to Buyer:

| Bouchard Transportation Co., Inc. Morton S. Bouchard III, President & CEO 58 South Service Rd., Ste. 150 Melville, NY 11747 MSBIII@bouchardtransport.com | With a copy to: BRENDAN J. BOUCHARD |

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 17 of 19

Bollinger initials _BB_ 6/20/17
Buyer initials _MB_
6/19/17

EXHIBIT "A"



If such notice is mailed, then it shall be deemed received either on the date of receipt or on the third business day following the date of mailing, whichever is earlier. Either of the above addresses may be changed upon proper notice of the other party, in which event the new address shall thereafter be used.

## ARTICLE 21.  GENERAL CONDITIONS

A.  This Agreement represents the entire agreement between the parties and supersedes all prior negotiations and agreements.   Any amendments hereto shall be in writing and signed by the party against whom it is sought to be enforced; a purported amendment, not in writing and not so signed shall be void.

B.  This Agreement shall be construed in accordance with the laws of the State of New York.

C.   Unless exempt, Bollinger shall comply with Executive Order 11246, effective October 4, 1965, together with all amendments thereto.

D.  The provisions of this Agreement are separate and severable. If any provision, item or application of this Agreement shall be deemed invalid, in whole or in part, such invalidity shall not affect other provisions, items or applications of this Agreement that can be given effect without the invalid provision, item or application.

E.  The article headings are for quick reference and convenience only, and do not alter, amend, explain or otherwise affect the terms and conditions of this agreement.

F.  Forbearance or failure of either party to promptly enforce its rights hereunder, one or more times, shall not operate as a waiver of either party's rights or the right of either party to enforce this Agreement as to any provision that a party has not enforced, one or more times.

[SIGNATURE PAGE FOLLOWS]

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 18 of 19

Bollinger initials *BB* 6/20/17

Buyer initials *MAB ID*

6/19/17 ✓

EXHIBIT "A"

ORIGINAL

IN WITNESS WHEREOF, Bollinger Marine Fabricators, L.L.C. has executed this Agreement on this ____ day of June, 2017 before the undersigned competent witnesses, but this Agreement shall be effective as provided in Article 2 hereof.

WITNESSES:                                    Bollinger Marine Fabricators, L.L.C.

_Denise H. Martin_                            _____
                                              Benjamin G. Bordelon,
_____             President & CEO


IN WITNESS WHEREOF, Bouchard Transportation Co. Inc. has executed this Agreement on this ____ day of June, 2017 before the undersigned competent witnesses, but this Agreement shall be effective as provided in Article 2 hereof.

WITNESSES:                                    Bouchard Transportation Co. Inc.

_____             _____
                                              Morton S. Bouchard III,
_Brendan J. Bouchard_                          President & CEO


FILED

DEC 18 2019

_____
CLERK OF COURT

Hull No. 691/B. NO 252
Vessel Construction Agreement
(Rev. June 2017)
Page 19 of 19

A TRUE COPY
Clerk of Court's Office
Thibodaux, La. Dec 18, 2019

_____
Clerk of Court

Bollinger initials _BB_ 6/20/17
Buyer initials _MB_
6/19/17

EXHIBIT "A"



S H I P Y A R D S

4/18/2018
Repair Specifications
Bouchard Transport
Mr. Bouchard
Job No. 5010691
B. No. 252                    P.O.                    Change Order 1

Bollinger Shipyards proposes to provide the material, labor, and equipment
necessary to perform the following:

9965 Ballast Water Treatment System
     Bollinger to purchase 2ea Panasia Ballast Water Management Systems.
     Model: GloEn-P500EX 2ea sets
     Treatment Capacity: 500m3/hr each
     Explosion-Proof Type
     Power Consumption: Max 60kw x2
     Pressure Drop: 0.3-0.7BAR
     Non Skid Type
     Bollinger to Modify existing house structures to accommodate Panasia Units.
     Terminate and run cables on the non skid type units as required.
     Engineering will redesign the houses to accommodate the Panasia units.
     Engineering will modify electrical dwgs for Panasia units.
     Engineering will modify the deck piping for panasia units.
     ABS cost to review all changes to Panasia ballast water treatment system.
     Shipping cost from New Orleans, LA to Amelia, LA.

                    Quote:    $  ~~621,750.00~~  595,750,00   AWARD 4/28/19

~~Due to long lead time of units, 28 days will need to be added to the delivery of the~~
~~Barge. New delivery of barge, if approved by 5/4/18 will be 2/2018.~~    AWARD
                                                                            4/25/18

.Change Order Totals:                    $   621,750.00

If in agreement your signature will authorize Bollinger Shipyards to proceed
in repairs to the B. No. 252.

Bollinger Representative:                          Bouchard Transportation:

_____                          _____

Date: _____                    Date: _____4/25/18_____

A TRUE COPY
Clerk of Court's Office
Thibodaux, La., Dec 18, 2019
Chutu J Moren
Clerk of Court

**EXHIBIT**
2

FILED
DEC 18 2019
Chutu J Moren
CLERK OF COURT

EXHIBIT "A"



**SHIPYARDS**

LOCATION WHERE WORK PERFORMED
*BOLLINGER MARINE FAB, LLC*
*816 BOLLINGER LANE*
*AMELIA LA 70340*

ACCOUNTS PAYABLE
BOUCHARD
TRANSPORTATION INC
58 SOUTH SERVICE RD - STE 150
MELVILLE NY 11747

| INVOICE | | |
|---|---|---|
| NUMBER | 501902002 | |
| DATE 05-FEB-19 | PAGE 1 of 1 | |
| PURCHASE ORDER NUMBER 5010691 | | |
| OUR REFERENCE 5010691 | | |
| SALES ORDER NUMBER | | |
| CUSTOMER NUMBER 1159 | LOCATION Bill | |

*Electronic Funds Transfer Instructions:*
REGIONS Bank
Birmingham, AL
Swift Code: UPNBUS44
Wire/ACH: 062005690
Credit To: Bollinger Shipyards LLC
Checking Acct: 0207870213
Remit Notification: BSLAR@BollingerShipyards.com

| TERMS 30 NET | DUE DATE 07-MAR-19 | | QUANTITY | | CUSTOMER CONTACT ACCOUNTS PAY | |
|---|---|---|---|---|---|---|
| ITEM NO. | PART NUMBER/DESCRIPTION | | ORDERED | SHIPPED | UNIT PRICE | EXTENSION |
| 1 | B. NO 252 - HULL 691 INVOICE FOR CHANGE ORDER 1 - BALLAST WATER TREATMENT SYSTEM AS PER ATTACHED | | 1 | 1 | 595,760.00 | 595,760.00 |

**FILED**

DEC 18 2019

*Chruti Monur*
**CLERK OF COURT**

EXHIBIT
**tabbies**
_3_

| | | SUBTOTAL | TAX | FREIGHT | TOTAL |
|---|---|---|---|---|---|
| Tax Registration Number: 47-1703961 Mail Payments To: BOLLINGER SHIPYARDS LLC DEPT #2371 PO BOX 11407 Birmingham, AL 35246-2371 | | 595,750.00 | 0.00 | 0.00 | 595,750.00 |

A TRUE COPY
Clerk of Court's Office

*After 30 days past the invoice date, interest at the rate of 1% per month (12% annual rate) will be assessed.*

Version: invo/cll.seg.20170905

Thibodaux, La. *Dec 18, 2019*

*Chruti Monur*
Clerk of Court

EXHIBIT "A"

D2035202

# CITATION LONG ARM

| | |
|---|---|
| BOLLINGER MARINE FABRICATORS LLC | SEVENTEENTH JUDICIAL DISTRICT |
| VS | |
| | PARISH OF LAFOURCHE |
| BOUCHARD TRANSPORTATION CO INC | STATE OF LOUISIANA |
| DOCKET NUMBER: C-139904 | |

TO:   BOUCHARD TRANSPORTATION CO INC
      58 SOUTH SERVICE ROAD, SUITE 150
      MELVILLE, NY 11747

      residing in NEW YORK.

      You are hereby summoned to comply with the prayer of the PETITION FOR

DAMAGES a true and faithful copy whereof accompanies this citation, or file your answer in

writing with the Clerk of said Court at his office in the City of Thibodaux, Louisiana, within

thirty days from the filing of the affidavit of service herein, in accordance with R.S.13:3201, et

seq., under penalty of default.

      Witness the Honorable Judges of said Court.

      Granted under the impress of the seal of said Court and my official signature, this

December 18, 2019.

                              ANNETTE M. FONTANA
                              CLERK OF COURT


                              _____
                              Deputy Clerk of Court
                              Lafourche Parish

ATTORNEY:

      ADAMS & REESE LLP
      ATTORNEYS AT LAW
      701 POYDRAS ST STE 4500
      NEW ORLEANS, LA 70139

A TRUE COPY
Clerk of Court's Office
Thibodaux, La. Dec 18, 2019
Clerk of Court

EXHIBIT "A"